# United States Court of Appeals
## For the First Circuit

No. 24-1253

EDUARDO TELES DE MENEZES; CARLOS EDUARDO RODRIGUES MENEZES,

Plaintiffs, Appellants,

v.

MARCO RUBIO, in his official capacity as Secretary of State;
RYAN ROWLANDS, in his official capacity as Consul General of the
U.S. Consulate General in Rio de Janeiro, Brazil,*

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Barron, Chief Judge,
Gelpí and Rikelman, Circuit Judges.

Adriana Lafaille, with whom Jessie J. Rossman, Isabel
Burlingame, American Civil Liberties Union Foundation of
Massachusetts, Inc., Laura Murray-Tjan, and FIAP, PLLC were on
brief, for appellants.

Leslie K. Dellon, American Immigration Council, Matthew Lorn
Hoppock, and The Hoppock Law Firm, on brief for American
Immigration Lawyers Association and American Immigration Council,
as amicus curiae supporting appellants.

---

*Pursuant to Federal Rule of Appellate Procedure 43(c)(2),
Secretary of State Marco Rubio and Consul General Ryan Rowlands
are automatically substituted as defendants.

Malcolm McDermond, with whom Victor M. Mercado-Santana, Trial Attorney, Office of Immigration Litigation, Yaakov M. Roth, Acting Assistant Attorney General, August E. Flentje, Acting Director, Samuel P. Go, Assistant Director, and Dhruman Y. Sampat, Senior Litigation Counsel, were on brief, for appellees.

---

September 18, 2025

---

**BARRON**, **Chief Judge**.    In this appeal, we confront a
challenge to a judgment of dismissal in a suit against the U.S.
Secretary of State and the Consul General of the U.S. Consulate in
Rio de Janeiro, Brazil.    It was brought in the United States
District Court for the District of Massachusetts.    The plaintiffs
are a naturalized U.S. citizen and his noncitizen son.    They are
challenging the reclassification of the parent's petition for a
visa on behalf of his son.    They allege that this reclassification
has unlawfully delayed the visa process in their case.

The merits of the claims hinge on whether the son,
despite turning 21 years old during the visa process, must be
treated as under "21 years of age" and, therefore, a "child" for
purposes of the visa petition classification under the Child Status
Protection Act (CSPA), Pub. L. No. 107-208, 116 Stat. 927 (2002).
If so, then the reclassification of the visa petition would be
unlawful, with the consequence that the son would be entitled to
a much speedier resolution of whether he is entitled to a visa
than if the reclassification were to remain in place.

The District Court did not address whether the
reclassification was lawful because it dismissed the complaint
under the doctrine of consular nonreviewability.  We first conclude
that the District Court erred in doing so, at least given the
arguments that the appellees have advanced, both below and to our
Court, for concluding that the doctrine applies.  We then address

whether, as the plaintiffs allege, the reclassification of the visa petition is unlawful. We conclude that it is. We thus reverse the claims' dismissal and remand for further consideration consistent with this decision.

## I.

The plaintiffs are Eduardo Teles de Menezes and his son, Carlos Eduardo Rodrigues Menezes.[1] They filed the operative complaint in 2023. "'[W]e draw the relevant facts from the plaintiff[s'] complaint' and 'from documentation incorporated by reference in the complaint.'" Thornton v. Ipsen Biopharms., Inc., 126 F.4th 76, 78 (1st Cir. 2025) (quoting Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 388 (1st Cir. 2014)).

A word of warning before we begin. To properly address the plaintiffs' challenge to the defendants' conduct, we need to review not only the various steps in the process of seeking a visa but also the special rules that apply to each of the distinct types of visas that are in play. So, we need to spend some time up front working through the relevant statutory provisions, technical though they are, before then turning back to the case at hand.

## A.

As a general matter, the process for obtaining an immigrant visa proceeds as follows: A sponsoring U.S. citizen or

---

[1] Because the plaintiffs share similar last names, we refer to them by their first names for clarity.

lawful permanent resident alien (LPR) files a Form I-130, Petition for Alien Relative ("the petition") with U.S. Citizenship and Immigration Services (USCIS) on behalf of their noncitizen relative, the beneficiary of the petition.  Once USCIS determines that a qualifying relationship exists and approves the petition, the petition is forwarded to the Visa Processing Center in the Department of State (DOS).[2]  See 8 C.F.R. § 204.2(d)(3); 8 U.S.C. § 1154(b).

The approval of a visa petition -- and the forwarding of it to DOS -- is but the first step in the process of obtaining a visa.  The next step involves the beneficiary submitting a visa application to DOS.  See 8 U.S.C. § 1202(a).  But a beneficiary may submit an application for a visa only once a visa in that category is available.  And, in some circumstances, the visa that the beneficiary seeks may not be available upon approval of their petition due to the annual numerical caps that have been placed by statute on visas in the relevant category.  See id. § 1153(a).

For a parent -- like Eduardo -- seeking a visa on behalf of their child, there are four relevant visa categories.  They are

_____

[2] This is true so long as the petition indicates that the noncitizen beneficiary will apply for their immigrant visa at a U.S. embassy abroad.  A separate process -- not relevant to this case -- is available to certain noncitizens who are eligible for "adjustment of status" and may, therefore, seek adjustment from within the United States on the basis of the approved visa petition.  See 8 U.S.C. § 1255(a).  In such a case, the petition is instead "retained" by USCIS.  8 C.F.R. § 204.2(d)(3).

defined by, among other things, whether the sponsoring parent is a U.S. citizen or an LPR and whether the child is considered "under 21 years of age" based on the statutory scheme.

The first visa category contains "immediate relatives" visas. These visas include those for children under 21 years of age whose sponsoring parent is a U.S. citizen. See id. § 1151(b)(2)(A)(i); id. § 1101(b)(1) (defining a "child" as "an unmarried person under twenty-one years of age"). Because there is no annual cap on the availability of "immediate relatives" visas, a noncitizen seeking a visa in this category may submit an application for such a visa as soon as USCIS approves the parent's visa petition. See Scialabba v. Cuellar de Osorio, 573 U.S. 41, 47-48 (2014) (plurality opinion).

The second visa category contains "F2A" visas. These visas are for children under 21 years of age whose sponsoring parent is an LPR. See 8 U.S.C. § 1153(a)(2)(A); id. § 1101(b)(1). There is an annual cap on the availability of F2A visas. See id. § 1153(a)(2)(A). Thus, a noncitizen seeking a visa in this category may submit a visa application -- after the parent's visa petition has been approved -- only once an F2A visa is available. See Scialabba, 573 U.S. at 47-48 (plurality opinion). It may take years for that eventuality to come to pass due to the queue of similarly situated beneficiaries waiting for an F2A visa and the

limitation on the supply of such a visa imposed by the annual cap. Id. at 50.

The third category contains "F1" visas. These visas are for sons and daughters over 21 years of age whose sponsoring parent is a U.S. citizen. See 8 U.S.C. § 1153(a)(1). Like the F2A category, there is an annual cap on the availability of visas in this category. Id. A noncitizen seeking such a visa, therefore, may submit an application -- after the parent's visa petition has been approved -- only once a visa in the F1 category is available. And, here, too, the waiting period for submitting a visa application may be lengthy.

There is a fourth visa category that also warrants mention up front. This category is not directly relevant to Carlos's and Eduardo's circumstances, but the governing statutory provisions shed light on the overall statutory scheme that defines the visa process.

This visa category contains the "F2B" visa, which is available for sons and daughters over 21 years of age whose sponsoring parent is an LPR. See id. § 1153(a)(2)(B). Once again, this category is subject to an annual cap. Id. Thus, like applicants seeking visas in the F2A and F1 categories, an applicant seeking an F2B visa may submit an application -- after the parent's visa petition has been approved -- only once a visa in the F2B category is available. Again, therefore, long waits can ensue.

**B.**

Given how this system operates and the delays in visa processing that may occur, there was, for a long time, a risk that a "child" beneficiary would "age out" of their visa category during the visa process -- i.e., turn 21 years old before their petition was approved.  When that happened, the visa petition would be reclassified from a visa category for children (the "immediate relatives" or F2A category) into a visa category for adult sons and daughters (the F1 or F2B category), with the consequence that there could be a years-long wait before an application for the visa could be submitted to DOS (because it could take that long for a visa in that new category to become available).

To fix this "aging out" problem, Congress enacted the CSPA.  It functions by requiring, in certain circumstances, that a beneficiary who turned 21 during the visa process be treated as if they were under 21 for the purpose of the visa process.

For example, before the CSPA's enactment, an individual who was under 21 when their parent's visa petition was filed -- and who, depending on the parent's immigration status, would therefore have fallen into either the "immediate relatives" or F2A category -- might, due to processing delays, turn 21 before the petition was approved.  If that were to happen, then that individual would end up (if the parent was a U.S. citizen) in the F1 category or (if the parent was an LPR) in the F2B category.

To be sure, that beneficiary still would be able to apply to DOS for a visa in one of those newly applicable categories. But "aging out" was nonetheless a concern for applicants and their sponsors. The wait times for F1 and F2B visas -- that is, visas for the adult sons and daughters of U.S. citizens and LPRs respectively -- were (and remain) generally significantly longer than the wait times for "immediate relatives" and F2A visas. See U.S. Dep't of State, Bureau of Consular Affs., Worldwide Final Action Dates, https://perma.cc/9RRF-2MTN; H.R. Rep. No. 107-45, at 2-3 (2001) (noting that "some sons and daughters of citizens will have to stay on a waiting list for from two to 13 years" because their applications were not processed "in a timely manner"). Indeed, as mentioned above, there is no wait time for "immediate relatives" visas at all.

The CSPA protects against "aging out" in several ways. First, with respect to the children of U.S. citizens -- those in the "immediate relatives" category -- the CSPA provides:

> [F]or purposes of [8 U.S.C. § 1151(b)(2)(A)(i), the "immediate relatives" category], a determination of whether an alien satisfies the age requirement [set forth in 8 U.S.C. § 1101(b)(1)] shall be made using the age of the alien on the date on which the petition is filed with [USCIS] . . . to classify the alien as an immediate relative . . . .

8 U.S.C. § 1151(f)(1). Thus, for children of U.S. citizens who are under 21 on the date their parent's visa petition is filed,

their "statutory" age remains frozen throughout the entirety of the visa process, no matter how much time has passed. As a result, the "aging out" problem no longer arises for them. If the beneficiary was under 21 when the petition was filed, then they will be considered under 21 for purposes of classifying their visa category.

Second, with respect to the children of LPRs -- those in the F2A category -- the CSPA provides for more limited protection. Specifically, the statute instructs:

> For purposes of [8 U.S.C. § 1153(a)(2)(A), the F2A category], a determination of whether an alien satisfies the age requirement [set forth in 8 U.S.C. § 1101(b)(1)] shall be made using--
>     (A) the age of the alien on the date on which an immigrant visa number becomes available for such alien . . . ; reduced by
>     (B) the number of days in the period during which the [petition] was pending.

Id. § 1153(h)(1). Thus, to determine whether the child of an LPR remains eligible for an F2A visa despite having turned 21 during the pendency of the visa process, the beneficiary's "statutory" age is calculated as follows. The time spent waiting for USCIS's approval of the visa petition is subtracted from the beneficiary's "biological" age, although the time spent waiting in the queue to submit the visa application is not. Their "statutory" age is then frozen at the time a visa becomes available to them. If, based on that calculation, the beneficiary's "statutory" age is 21 or older,

the "petition shall automatically be converted to the appropriate category" -- generally the F2B category for the adult sons and daughters of LPRs.  Id. § 1153(h)(3).

For example, if an LPR filed a petition for their 18-year-old daughter, the daughter would not age out of the F2A category even if it took the government three years to approve the petition and another two years for an F2A visa to become available, such that she had turned 23 by the time she submitted the application for the visa to DOS.  The daughter's "statutory age" would be her age when an F2A visa became available (23 years old) minus the bureaucratic delay in waiting for the petition to be approved (3 years) -- i.e., 20 years old.

The CSPA also addresses one additional eventuality: the possibility that the sponsoring parent of a beneficiary in either the F2A category (for children of LPRs) or the F2B category (for adult sons or daughters of LPRs) naturalizes during the pendency of the visa process.  The CSPA does so as follows.

When the sponsoring parent of a beneficiary in the F2B category (for the adult son or daughter of an LPR) naturalizes, the CSPA gives the beneficiary a choice.  The CSPA provides that, if, after filing the F2B petition, the parent "subsequently becomes a naturalized citizen of the United States," the "petition shall be converted to [an F1] petition" (for the adult son or daughter of a U.S. citizen), id. § 1154(k)(1), unless the beneficiary

"elects not to have such conversion occur," id. § 1154(k)(2). In
that case, the eligibility determination "shall be made as if such
naturalization had not taken place." Id.

In this way, the CSPA altered the pre-existing
framework. Under the pre-CSPA framework, F2B beneficiaries did
not have the option to remain in the F2B category upon their
parent's naturalization even if reclassifying into the F1 category
would mean a longer wait to submit a visa application. See 8
C.F.R. § 204.2(i)(3) (2002). Thus, the CSPA removed the risk that
an F2B beneficiary -- by converting automatically to the
potentially longer F1 queue -- would be made worse off by their
parent's naturalization.

When the parent of a beneficiary in the F2A category
(for an LPR's child under 21 years of age) naturalizes, the CSPA
provides as follows:

> In the case of [a visa petition] initially
> filed for an alien child's classification as
> [an F2A beneficiary], based on the child's
> parent being lawfully admitted for permanent
> residence, if the petition is later converted,
> due to the naturalization of the parent, to a
> petition to classify the alien as an immediate
> relative under [8 U.S.C. § 1151(b)(2)(A)(i)],
> the determination described in [8 U.S.C.
> § 1151(f)(1), the paragraph governing the age
> determination for "immediate relatives"
> petitions,] shall be made using the age of the
> alien on the date of the parent's
> naturalization.

8 U.S.C. § 1151(f)(2).

Through this provision, the CSPA ensures that an F2A beneficiary generally benefits from their parent's naturalization. The CSPA accomplishes this result by converting the visa petition to the "immediate relatives" category, for which a visa is always available.

This provision also contains an instruction, however, that, in the event of the conversion of an F2A petition as a result of a parent's naturalization, the determination of whether the beneficiary meets the age requirement to qualify as an immediate relative "shall be made using the age of the alien on the date of the parent's naturalization." Id. Thus, there is a question -- central to this appeal -- whether the "age of the alien on the date of the parent's naturalization," id., refers to the beneficiary's statutory or biological age.

So far, we have addressed only the first four steps in the visa process. Those steps are (1) the filing of a petition for a visa with USCIS, (2) the approval or denial of the petition by USCIS, (3) the forwarding of the petition to DOS if it has been approved, and (4) the filing of a visa application to DOS once the petition has been approved and a visa in the applicable visa category is available.

But, of course, the visa process does not end with the submission of the visa application. There remains the review of

the beneficiary's visa application by a consular officer at the applicable U.S. embassy abroad. See Scialabba 573 U.S. at 48.

The consular officer conducting that review is responsible for making a final determination of an applicant's eligibility for an immigrant visa. See 8 U.S.C. § 1201. A noncitizen beneficiary can be ineligible for an immigrant visa on a number of grounds, regardless of the applicant's qualifying relationship to a U.S. citizen or LPR. See id. § 1182(a) (enumerating various grounds that render a noncitizen generally "ineligible" for a visa). The review of the application for eligibility generally includes an in-person interview with a consular officer. See id. § 1202(h)(1); 22 C.F.R. § 42.62.

## C.

We are at last ready to come back to the case at hand. The operative complaint alleges the following relevant facts about the beneficiary, Carlos, and his sponsor -- and father -- Eduardo.

Carlos was admitted to the United States on a tourist visa on January 20, 2013. For several years, he resided with Eduardo in Massachusetts, where he attended and graduated from high school. He later studied at Target International Student Center on a student visa.

On December 9, 2017, Eduardo obtained lawful permanent resident status. A month later, on January 12, 2018, he filed a Form I-130, Petition for Alien Relative ("Visa Petition"), on

Carlos's behalf with USCIS, the first step in the process of sponsoring a family member for an immigrant visa.

Thereafter, Carlos, who was 20 years old when Eduardo filed the Visa Petition, turned 21. And then, on August 12, 2019, USCIS approved Eduardo's Visa Petition (a total processing time of a year and seven months). A visa in the F2A category was immediately available for Carlos at that time.

Carlos subsequently submitted a visa application. He was then called for an interview with the U.S. Consulate in Rio de Janeiro, Brazil. The consulate scheduled the interview for October 15, 2021.

On May 27, 2021 -- before Carlos's interview took place -- Eduardo naturalized. Carlos attended the consular interview in October 2021. But, some months later, on March 4, 2022, Carlos received an email from the consulate ("March 4 Email"). The email states as follows:

> Please note that based in [sic] the Naturalization date of the petitioner the applicant is not eligible for the Child Status Protection [A]ct (CSPA) since he was over 21 years old when the petitioner naturalized. This application is now F1 [the visa category for adult sons and daughters of U.S. citizens] and his visa category is not current. Right now the applicants that are being called for an interview in this visa category are the ones who had their petition filed on or before 01DEC2014 and this applicant had the petition filed on 12Jan2018.

In their complaint, Carlos and Eduardo allege that DOS "incorrectly reclassified" Eduardo's visa petition into the F1 category in violation of the CSPA. The complaint alleges that, under the CSPA, Carlos remained "under twenty-one years of age" on the date of Eduardo's naturalization, and, therefore, qualified as an immediate relative, for whom a visa is always available by law (because visas in the "immediate relatives" category are not subject to any annual numerical caps).

The complaint identifies as "final agency action" the "reclassification . . . as indicated by the March 4 Email," and asserts that this action violated the Administrative Procedure Act because it was contrary to law. See 5 U.S.C. §§ 706(2)(A), (D). The complaint also asserts a claim under the Due Process Clause. See U.S. Const. amend. V. As relief, the complaint seeks a declaratory judgment that "Carlos [is] the 'immediate relative' of his U.S.-citizen father," or, in the alternative, an order that the defendants "reinstate Eduardo's visa petition to the F2A category."

On February 13, 2023, the defendants moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They argued that the District Court was barred by the doctrine of consular nonreviewability from reviewing the challenge to the consular officer's "denial of Carlos's visa." They further

contended that even if limited judicial review were available under that doctrine, "such review is limited to determining if the consular officer provided a facially legitimate and bona fide reason for denying the visa," which they contended the consular officer had provided by pointing to the CSPA and correctly applying its provisions.

The plaintiffs opposed the motion, arguing that "contrary to [the d]efendants' characterization . . . , this case is not about the denial of a visa to a noncitizen," but rather "the erroneous reclassification of a visa petition filed by a U.S. citizen." They thus argued that their case did "not trigger consular nonreviewability." The plaintiffs further argued that the reclassification of the visa petition to the F1 category violated the requirements of the CSPA.

On January 18, 2024, the District Court granted the defendants' motion to dismiss, concluding that the doctrine of consular nonreviewability precluded review. The plaintiffs timely appealed.

## II.

We review de novo the District Court's ruling on a motion to dismiss. Irizarry v. United States, 427 F.3d 76, 77 (1st Cir. 2005). "In so doing, we accept the well-pleaded facts as true and draw all inferences in [the plaintiffs'] favor . . . ." Id. The proper interpretation of a statute is a question of law which is

likewise reviewed de novo.  Am. Cyanamid Co. v. Capuano, 381 F.3d 6, 12 (1st Cir. 2004).

The defendants moved to dismiss this action both for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(1), (6).  The District Court granted the motion to dismiss based on the doctrine of consular nonreviewability.  It did not indicate, however, whether it was dismissing the complaint under Rule 12(b)(1) or 12(b)(6).

We have previously described the doctrine of consular nonreviewability using the language of jurisdiction.  See Chiang v. Skeirik, 582 F.3d 238, 242 (1st Cir. 2009); Adams v. Baker, 909 F.2d 643, 649 (1st Cir. 1990).  However, the Supreme Court of the United States recently clarified that "the doctrine of consular nonreviewability is not jurisdictional."  Dep't of State v. Muñoz, 602 U.S. 899, 908 n.4 (2024); see also Raouf v. U.S. Dep't of State, 702 F. Supp. 3d 19, 25 (D.N.H. 2023) (describing the "growing consensus among the Courts of Appeals that, despite statements in the caselaw suggesting that the doctrine is jurisdictional in nature, consular nonreviewability is in reality a merits issue").  We therefore assess the District Court's dismissal as a merits question under Rule 12(b)(6).

## III.

A consular officer's decision "to admit or to exclude an alien" is generally "final and conclusive." Muñoz, 602 U.S. at 908 (quoting United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543 (1950)). The doctrine of consular nonreviewability prohibits "judicial review of a consular officer's denial of a visa." Id.

If the appellees are right that the doctrine precludes review in this case, then our analysis is at an end. The appellants contend, however, that the doctrine has no application here for either of two reasons. First, they contend that their claims do not allege that a consular officer's denial of a visa even occurred, let alone that any such denial was wrongful. Second, they contend that, in any event, their claims concern only the proper interpretation of the CSPA and therefore "do[] not implicate the independent judgment of [a] consular officer[]." For the reasons we will explain, we agree with the appellants' first contention and so do not address the second.

The appellants contend that their case "does not involve the denial of a[] [visa] application" because it challenges only the "reclassification of [Eduardo's] visa petition." (Emphasis added.) For that reason, they contend that the doctrine of consular nonreviewability has nothing to do with this case.

In disagreeing, the appellees appear to be arguing that the doctrine of consular nonreviewability bars review here because the appellants are "at bottom" challenging a "consular officer's decision to refuse a visa."  We are not persuaded.

The complaint does not allege that a visa denial has occurred or that any such denial was unlawful.  It instead alleges that because Carlos was erroneously reclassified into the F1 category, in which his priority date was not current, he continues to "await[] resolution of his visa application."  In that regard, the complaint asserts that the consulate informed Carlos on March 4, 2022, that, because of his age, his application "is now F1" and that "applicants that are being called for an interview in [the F1] category are the ones who had their petition filed on or before 01DEC2014 and [that Carlos] had [his] petition filed on 12Jan2018."  As the appellants explain, "rather than purport to deny the visa application, [the email] only conveys that Carlos was not yet eligible to be considered for a visa" based on his reclassification into the F1 category.  (Emphasis added.)

True, the complaint alleges that the challenged erroneous reclassification of the visa petition here has had, and will continue to have, the effect of causing appellants to wait for Carlos's visa application to be adjudicated despite their claim that they are entitled to an earlier adjudication.  But, as the appellants point out, a number of courts have concluded that the

doctrine of consular nonreviewability does not apply to claims that "challenge[] the consul's authority to suspend . . . visa applications." Patel v. Reno, 134 F.3d 929, 932 (9th Cir. 1997); see also Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry, 168 F. Supp. 3d 268, 292 (D.D.C. 2016); Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 13 (D.D.C. 2022); Raouf, 702 F. Supp. 3d at 30-31. So, they contend, the alleged practical consequence of the reclassification does not mean that, in challenging the reclassification, they are challenging the denial of the visa.

The appellees attempt to distinguish these "delay" cases by arguing that, in them, "there was no [visa] denial." But the appellees appear to agree that the reclassification of a visa petition is, in general, subject to judicial review, as they cite approvingly to authority for that proposition. See Cuthill v. Blinken, 990 F.3d 272, 278, 285 (2d Cir. 2021) (reviewing a suit against the U.S. Secretary of State for reclassifying a visa petition from the F2A category to the F1 category). Thus, the only way to understand their argument is to read it as alleging that the reclassification at issue here is somehow the functional equivalent of a visa denial, even though they are accepting that a reclassification, in general, is not necessarily one.[3] We fail

_____

[3] Appellees point this Court to 22 C.F.R. § 42.62(b) and 8 U.S.C. § 1201(a)(1) for the proposition that classification of a

to discern from the appellees' arguments -- or the District Court's ruling -- a basis for concluding that the doctrine of consular nonreviewability is a barrier to judicial review of the claimed reclassification in this case.

The appellees do cite Atieh v. Riordan, 797 F.3d 135 (1st Cir. 2015), as if it supports their position. But that precedent at most reveals that there exists a different avenue to challenge a visa classification decision, not that the doctrine of consular nonreviewability precludes such a challenge in a case like this one. See id. at 138-39 (reviewing Board of Immigration Appeals's affirmation of USCIS's denial of a petition for the sponsor's alleged fiancé).

The appellees also invoke Chiang v. Skeirik as support for their position. That case did apply the doctrine of consular reviewability to bar a challenge to the denial of a visa petition. Chiang, 582 F.3d at 242-43. But, in that case, as the appellees explain, the denial marked the end of the visa process for that beneficiary's visa application. Indeed, the denial of the petition there followed the denial of the visa application by a consular

---

visa applicant is a final determination of the consular officer. However, even taking this as true, it does not contravene our determination that this is not a visa denial. In fact, 22 C.F.R. § 42.62(b) explicitly distinguishes a consul's classification determination, id. § 42.62(b)(i), from the consul's determination regarding an "applicant's eligibility to receive a visa," id. § 42.62(b)(ii).

officer.  Id. at 240.  Here, by contrast, we are dealing with a
challenge only to the reclassification of a visa petition, a
circumstance that Chiang did not address.

We note, too, that below the appellees failed to explain
how, if the doctrine of consular nonreviewability preludes a
challenge to the visa reclassification at issue, it would not bar
challenge to any reclassification.  Instead, the appellees argued
that the appellants were wrong to contend that "the consular
nonreviewability doctrine is inapplicable" on the ground that what
appellants are "truly challenging is the consular officer's denial
of his immigrant visa application because no visa is currently
available to Carlos."[4]  But the appellants allege that there has
been no denial of the visa application by the consular officer
precisely because of the reclassification decision.  And the
District Court, in determining that the doctrine nonetheless
barred the challenge to the reclassification decision, did not
address this gap in the appellees' position, insofar as the
appellees do not now dispute that a reclassification decision may
be challenged.  And we see no basis for concluding that this
specific reclassification may not be challenged due to the doctrine

_____

[4] The cases to which appellants cited below each dealt with a
denial of a visa application, not a challenge to the
reclassification of one.  See Matushkina v. Nielsen, 877 F.3d 289,
294 (7th Cir. 2017); Capistrano v. Dep't of State, 267 F. App'x
593, 594-95 (9th Cir. 2008).

of consular reviewability if, in general, that doctrine does not bar challenge to every reclassification decision.

## IV.

There remains to address whether appellants are right that the reclassification of the visa petition into the F1 category (adult sons and daughters of U.S. citizens) was unlawful. In their view, rather than reclassifying the petition into the F1 category, it should have been reclassified, upon Eduardo's naturalization, into the "immediate relatives" category (children of U.S. citizens).[5] They contend that is so because Eduardo had become a U.S citizen and, under the CSPA, Carlos had to be treated as if he were under 21 years of age, notwithstanding that he had turned 21 during the visa process.

Appellants' contention turns, in the end, on the proper construction of a single phrase in 8 U.S.C. § 1151(f)(2) -- the provision of the CSPA that addresses the conversion of an F2A petition into an "immediate relatives" petition. That phrase instructs that the determination of whether the noncitizen beneficiary satisfies the age requirement to be reclassified as an

---

[5] Appellants argue in the alternative that, "at a minimum," the CSPA "would have kept the petition in the F2A category" because there is "no statutory vehicle [that] authorized the government's conversion of the petition to the . . . F1 category." Because we agree that the CSPA's age-out protections require the conversion of the visa petition to the "immediate relatives" category, we do not address this alternative argument.

immediate relative "shall be made using the age of the alien on the date of the parent's naturalization."

Appellants contend that "age," as used in § 1151(f)(2), refers not to the beneficiary's "biological age." Instead, they argue, "age" refers to the "age" of the noncitizen as determined by a formula that applies to all F2A beneficiaries, as set forth in § 1153(h)(1). They contend that is so because § 1153(h)(1), in setting out a formula to calculate the age of an F2A applicant, must be understood to interact with § 1151(f)(2), which concerns potentially reclassifying an F2A applicant (based on their age) into an immediate relative applicant.

The District Court did not address this issue given its reliance on the doctrine of consular nonreviewability to dismiss the claims. Nevertheless, the issue presents a question that "is purely a matter of statutory interpretation, and therefore, a question of law, which we can review in the first instance." Gately v. Massachusetts, 2 F.3d 1221, 1228 n.4 (1st Cir. 1993); see also R.I. Hosp. Ass'n v. City of Providence ex rel. Lombardi, 667 F.3d 17, 37 n.20 (1st Cir. 2011) (same). The parties have also fully briefed and argued this question. We thus proceed to address it. As we will explain, we agree with the appellants and so construe "age" in § 1151(f)(2) just as the only two circuits to have construed that term in § 1151(f)(2) have. See Tovar v. Sessions, 882 F.3d 895, 905 (9th Cir. 2018) (holding that the term

"age" in § 1151(f)(2) refers to the age calculation in § 1153(h)(1)); Cuthill, 990 F.3d at 285 (same).

**A.**

"A court's lodestar in interpreting a statute is to effectuate congressional intent." City of Providence v. Barr, 954 F.3d 23, 31 (1st Cir. 2020). "[T]he quest to determine this intent must start with the text of the statute itself." Id. We generally accord statutory text "its ordinary meaning," but we also must take account of the "specific context in which that language is used, and the broader context of the statute as a whole." United States v. Roberson, 459 F.3d 39, 51 (1st Cir. 2006) (quoting Mullane v. Chambers, 333 F.3d 322, 330 (1st Cir. 2003)); see also City of Providence, 954 F.3d at 31. As such, "[w]hen a word carries both an ordinary and specialized meaning, we look to context to choose between them." Med. Marijuana, Inc. v. Horn, 604 U.S. 593, 603 (2025). "Our duty, after all, is 'to construe statutes, not isolated provisions.'" King v. Burwell, 576 U.S. 473, 486 (2015) (quoting Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 290 (2010)).

The appellees contend that the term "age," as used in § 1151(f)(2), must refer to the noncitizen's "actual" -- that is, "biological" -- age, in accordance with the "common, ordinary meaning" of that term. Thus, because Carlos's biological age on the date of Eduardo's naturalization was over 21, they argue,

Eduardo's petition cannot have converted to an "immediate relatives" petition, as Carlos no longer satisfied the age requirement for so converting it.  Consequently, they argue that, insofar as the appellants contend that the reclassification was unlawful because it deemed the F1 category applicable rather than the "immediate relatives" category, the appellants are wrong.

The problem with the appellees' position, as the appellants point out, is that it fails to account for the context in which that provision at issue is found.  The phrase "the age of the alien on the date of the parent's naturalization" appears in a provision of the CSPA, § 1151(f)(2), that applies <u>only</u> to beneficiaries of F2A petitions.  That is significant, they contend, because § 1153(h)(1) provides modified instructions for how to determine whether a beneficiary of an F2A petition meets the age requirement to be a "child."  Specifically, that provision instructs that the determination of whether an F2A beneficiary is "under twenty-one years of age," 8 U.S.C. § 1101(b)(1), depends not on the beneficiary's biological age, but rather on a statutory formula,[6] under which -- there is no dispute -- Carlos would be under 21 years of age.

---

[6] The formula is as follows: "the age of the [F2A beneficiary] on the date on which an immigrant visa number becomes available [to them] . . . reduced by . . . the number of days . . . during which the [visa] petition . . . was pending." <u>Id.</u> § 1153(h)(1)(A)-(B).

Accordingly, the appellants contend that this statutory formula, which "freezes the[] [F2A beneficiary's] age at the time of visa availability, and subtracts the time USCIS took to process the visa petition," also dictates an F2A beneficiary's "age" for the purposes of converting the F2A petition to an "immediate relatives" petition under § 1151(f)(2).  In other words, the appellants contend that the word "age" in § 1151(f)(2) must be understood in light of § 1153(h)(1), not in isolation from it.  We agree.  See Cuthill, 990 F.3d at 279-80 ("Because § 1151(f)(2) refers solely to F2A beneficiaries, and because Congress specifically provided for a modified age calculation for F2A beneficiaries, . . . the best textual reading of 'the age of the [F2A beneficiary] on the date of the parent's naturalization' is that it refers to the F2A beneficiary's statutory age on such date." (second alteration in original)).

To be sure, as the appellees emphasize, "[t]here is no statutory provision that defines or modifies the term 'age' as used in 8 U.S.C. § 1151(f)(2)."  But, as we have explained, § 1153(h)(1) supplies a modified formula for determining the age of an F2A beneficiary, and § 1151(f)(2) applies, by its own terms, only to such beneficiaries.  Thus, the "age" of every beneficiary to whom § 1151(f)(2)'s conversion rule applies is already modified, namely, by § 1153(h)(1).

For similar reasons, we are unpersuaded by the appellees' contention that § 1151(f)(2) cannot be understood to incorporate § 1153(h)(1)'s age formula because the two provisions do not expressly cross-reference one another. The two provisions were enacted together and are both directed at the same subject: determining whether a petition initially filed as an F2A petition remains an F2A petition or "convert[s]" into a different category. Compare 8 U.S.C. § 1151(f)(2) (providing for the "conver[sion]" of an F2A petition to the "immediate relatives" category), with id. § 1153(h) (providing for the "conver[sion]" of an F2A petition to the F2B category if the statutory age is calculated "to be 21 years of age or older"). Thus, no cross-reference is necessary to make apparent the obvious overlap between these two provisions. See Tovar, 882 F.3d at 901 ("An explicit cross-reference is unnecessary when the three provisions are so closely related and form a cohesive whole.").

In any event, as we have explained, § 1151(f)(2) applies specifically and exclusively to "petition[s] . . . initially filed for an alien child's classification as [an F2A beneficiary] under [8 U.S.C. §] 1153(a)(2)(A)." Section 1153(h)(1), in turn, provides the age calculation "[f]or purposes of" that very subsection. See id. § 1153(h)(1) ("For purposes of subsection[] (a)(2)(A) . . . ."). Accordingly, the relationship between the

two provisions is clear from the text, even in the absence of the precise cross-reference that the appellees contend is lacking.

The appellees press that § 1153(h)(1)'s "[f]or purposes of" language cuts against the appellants' reading. They emphasize that this language references only the F2A category and one other (inapplicable) visa category but "[n]owhere . . . make[s] any reference to the immediate relative category." Thus, they contend, that language must be read to preclude the formula in § 1153(h)(1) from applying to the term "age" in § 1151(f)(2), as the appellees argue is the case.

The problem for the appellants is that § 1153(h)(1) plainly applies only to petitions "initially filed" in the F2A category. Id. § 1151(f)(2). It does not apply to petitions filed in the "immediate relatives" category, which are addressed exclusively by § 1151(f)(1). See id. § 1151(f)(1) (addressing "petition[s] . . . filed with the Attorney General . . . to classify [an] alien as an immediate relative"). There is, therefore, nothing anomalous about § 1153(h)(1)'s failure to expressly extend its age calculation rule to petitions filed in the "immediate relatives" category, as even the appellees agree that § 1153(h)(1) has no application to any such petition. Their contention is only that it applies to a petition, like theirs, which was filed in the F2A category.

Finally, the appellees assert that § 1151(f)(1), which neighbors § 1151(f)(2), provides yet another reason to conclude that "age," as used in § 1151(f)(2), refers to "biological age." That is so, they contend, because § 1151(f)(1) uses that same term and because, in that provision, the term "clearly refers" to "actual, biological age."

For all the reasons set forth above, however, § 1153(h)(1) must be understood to provide a contrary instruction for determining "age" which, by its terms, reaches only petitions filed in the F2A category and, therefore, does not reach the category of petitions to which § 1151(f)(1) applies. Indeed, despite the proximity of § 1151(f)(1) and § 1151(f)(2), the two provisions are directed at two entirely different sets of visa petitions. There is no overlap between the petitions to which § 1151(f)(1) applies (petitions filed in the "immediate relatives" category) and petitions to which § 1151(f)(2) applies (petitions filed in the F2A category). Accordingly, the proximity of the two provisions alone does not persuade us that their definitions of a beneficiary's "age" are the same, particularly in the face of a contrary instruction elsewhere in the same statutory scheme.

All that said, we acknowledge that the grafting of § 1151(f)(2) and § 1153(h)(1) is not seamless. Section 1153(h)(1) does not directly redefine the word "age." In that respect, its instructions are not a perfect substitute for the word "age" in

§ 1151(f)(2).  Moreover, as a matter of ordinary usage, the word "age" does generally refer to a person's biological age.

But, as we noted at the outset, "the meaning of statutory language, plain or not, depends on context." Holloway v. United States, 526 U.S. 1, 7 (1999) (quoting Brown v. Gardner, 513 U.S. 115, 118 (1994)); see also FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) ("It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (quoting Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989))).  Accordingly, rather than "cull[] selected words" to divine their meaning, our task is to "examine the statute as a whole," before we can say with certainty whether its meaning is plain and what that meaning is.  O'Connell v. Shalala, 79 F.3d 170, 176 (1st Cir. 1996).  And 8 U.S.C. § 1153(h)(1) does clearly and explicitly modify how to "determin[e] . . . whether [an F2A beneficiary] satisfies the age requirement," id. § 1153(h)(1), namely whether they are "under twenty-one years of age," id. § 1101(b)(1).

Thus, we must "read[] [the relevant provisions] in concert," Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999), such that the reference to the beneficiary's "age" in § 1151(f)(2) incorporates the instruction set forth in § 1153(h)(1) for "determining" the beneficiary's age.  For, it is

that construction that better "fit[s] . . . [the CSPA's] parts into a[] harmonious whole," Brown & Williamson, 529 U.S. at 133 (quoting FTC v. Mandel Bros., Inc., 359 U.S. 385, 389 (1959)), and, thus, provides a reason for our favoring the term's "specialized meaning" over its "ordinary" one. Horn, 604 U.S. at 603.

## B.

The statutory structure confirms what the text suggests. See King, 576 U.S. at 492 ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." (alteration in original) (quoting United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988))); Stauffer v. IRS, 939 F.3d 1, 7 n.8 (1st Cir. 2019). Indeed, a contrary construction of the text would produce three significant anomalies that the appellees cannot explain.

## 1.

The first anomaly arises because the family-based visa scheme affords preferential treatment to the children of U.S. citizens over the children of LPRs, by exempting "immediate relatives" of U.S. citizens from the visa cap, see 8 U.S.C. § 1151(b)(2)(A)(i), and generally privileging U.S. citizens over LPRs in the visa process, see, e.g., id. § 1153(a) (allowing U.S.

citizens to petition for more categories of relatives than LPRs). The appellees' reading, though, has the effect of penalizing a parent's naturalization.

In their view, an F2A beneficiary maintains the CSPA's age-out protections <u>only</u> so long as their LPR parent does <u>not</u> naturalize. For, upon naturalization, all the petition's processing time which, until that point, did not count against the beneficiary, <u>see</u> 8 U.S.C. § 1153(h)(1)(B), would, as a direct result of the parent's naturalization, suddenly be counted against the beneficiary's age. For beneficiaries like Carlos, this can mean the difference between immediate eligibility for a visa and an eight-year-long wait. <u>See</u> U.S. Dep't of State, Bureau of Consular Affs., <u>Visa Bulletin for May 2025 (Apr. 3, 2025)</u>, https://perma.cc/UC9S-JTGA.

The incongruity of this result is underscored by the CSPA, which signals Congress's intent not to have a parent's naturalization penalize a beneficiary. Section 1154(k) addresses the conversion of an F2B petition (for the adult son or daughter of an LPR) into an F1 petition (for the adult son or daughter of a citizen), and it provides that, upon a parent's naturalization, the beneficiary of an F2B petition can choose between staying in the F2B category or converting into the F1 category. <u>See</u> 8 U.S.C. § 1154(k)(1)-(2). In either case, the petition retains its original priority date. <u>Id.</u> § 1154(k)(3).

In other words, regardless of the length of the visa queues in the two categories, the beneficiary of an F2B petition whose parent naturalizes will never be penalized. In fact, in the case where the F1 queue is shorter than the F2B queue, the beneficiary will be benefited.

The appellees do contend that any "adverse effect" that their preferred reading of § 1151(f)(2) visits on beneficiaries, due to a sponsoring LPR parent's naturalization during the visa process, "is not a result of the CSPA but of the preexisting visa limits." For example, they assert that the length of the visa queues in the F1 and F2A categories change and that at certain times, and for nationals of certain countries, the F1 queue is actually shorter than the F2A queue. So, they argue, in that case, naturalization (and, thus, conversion into the F1 category) would benefit, not harm, the beneficiary.

The appellees attempt to further illustrate their argument as follows. They assert that "if Appellant's reading of the CSPA were to be adopted in March 2003, naturalization of the petitioner would have harmed beneficiary nationals of Mexico and the Philippines[, for whom the F1 wait times were longer than the F2A wait times,] but not other beneficiaries, creating an absurd result where the ability to convert to a more 'favorable' category would depend on nationality."

The argument rests on a faulty premise. Any F2A beneficiary whose parent naturalizes and who is "under twenty-one years of age," id. § 1101(b)(1), "on the date of the parent's naturalization," id. § 1151(f)(2), is eligible to be considered for an "immediate relatives" visa, for which there is never any wait. Thus, naturalization categorically benefits F2A beneficiaries, regardless of their nationality or the relative length of the F2A and F1 queues for different noncitizen nationals. And if, on the other hand, the F2A beneficiary's statutory age is 21 or older, then the petition will "automatically . . . convert[]" to the F2B category. Id. § 1153(h)(3). In that case, upon the parent's naturalization, the CSPA provides the beneficiary with the option of converting to the F1 category or remaining in the F2B category, depending on their preference (and, presumably, the length of the visa queues). See id. § 1154(k).

Thus, under the appellants' construction of the statute, no benefit or penalty turns on the beneficiary's nationality. To the contrary, it is the appellees' proffered interpretation that, anomalously, would -- when the F1 queue is shorter than the F2A queue for certain nationalities -- make "the ability to convert to a more 'favorable' category . . . depend on nationality."

**2.**

The second anomaly that the appellees' view occasions arises because it would require the CSPA to be read to protect

against aging out as a result of bureaucratic delay for child beneficiaries in <u>both</u> the "immediate relatives" and the F2A categories but not for the subset of beneficiaries who move from one category to the other. So construing the statute would not only "leave a sizable hole in the CSPA's age-out protections," <u>Cuthill</u>, 990 F.3d at 281, but also "defeat one of its most important purposes," <u>United States</u> v. <u>Gelin</u>, 712 F.3d 612, 619 (1st Cir. 2013). And while we do not dispute that Congress could choose to create such a hole, we see little reason to find one when the text comfortably suggests there is none to be found.

The appellees contend that there is nothing anomalous about construing the CSPA to provide non-exhaustive age-out protections. They point out that, although the CSPA "mitigate[s] the 'aging out' problem," it does not eliminate it entirely. (Alterations in original) (quoting <u>Scialabba</u>, 573 U.S. at 51). And it is true that the CSPA does not foreclose the possibility that a child beneficiary will "age out" while waiting for a visa. F2A beneficiaries, for example, are protected only against delays in the processing of their petition, not against delays in waiting for an available visa. <u>See</u> 8 U.S.C. § 1153(h)(1)(B).

But the appellants' contention is not that the CSPA must be construed to provide exhaustive age-out protections. It is simply that it would contravene the statutory design to deny F2A beneficiaries -- to whom the CSPA <u>does</u> extend age-out

protections -- the very protections from bureaucratic delay that the statute does provide.

For that reason, the appellees' characterization of the appellants' arguments as seeking "extra protection" is mistaken. Every beneficiary to whom § 1151(f)(2) applies -- namely, beneficiaries of an F2A petition -- is protected by the CSPA against aging out as a result of bureaucratic delay. See id. § 1153(h)(1). The question, then, is not whether an F2A beneficiary whose parent naturalizes should receive "extra protection" beyond that provided for in the statute. It is whether such a beneficiary should be denied age-out protections that the statute expressly supplies for F2A beneficiaries whose parents do not naturalize. The appellees provide no explanation that would account for this anomalous result.

**3.**

The third, and final, anomaly that would arise from the appellees' construction of the statute is that adult sons and daughters would receive a benefit denied to minor sons and daughters, notwithstanding that the family-based visa system generally preferences child beneficiaries. See Fiallo v. Bell, 430 U.S. 787, 788 (1977). This anomaly would arise because, in the appellees' view, the CSPA provides adult F2B beneficiaries, but not minor F2A beneficiaries, the ability to opt out of converting to the F1 category upon a parent's naturalization, see

8 U.S.C. § 1154(k)(2).  Accordingly, under the appellees' reading of the statute, it is the adult sons and daughters who receive preferential treatment in the form of the ability to opt out of a longer queue.  Yet the appellees provide no explanation that would account for this departure from the overarching statutory scheme's generally child-favoring disposition.

### C.

The legislative history provides yet more confirmation that Congress's aim in enacting the CSPA was to "address[] the predicament" of noncitizens who age out "through no fault of their own[]" due to bureaucratic delays in the processing of a visa petition.  H.R. Rep. No. 107-45, at 2.  As the Second Circuit noted in Cuthill, 990 F.3d at 284-85 (citing the legislative history), the measure's bipartisan supporters repeatedly emphasized their conclusion that the time it takes the government to process a visa petition should not count against a beneficiary's age.  See 147 Cong. Rec. H29002 (2001) (statement of Rep. Sheila Jackson Lee) ("This bill corrects the problem of aging-out under current law."); id. (statement of Rep. George Gekas) ("What we do here today is adjust, through the use of common sense, a bad situation.").  The House Report, moreover, indicates the drafters' judgment that this same assurance should be afforded "when permanent resident parents petition for immigrant visas for their sons and daughters and later naturalize."  H.R. Rep. No. 107-45, at 3.

Under the appellees' interpretation of the statute, however, bureaucratic delay would count against just that category of petitioners. Any processing time that passed before the date of the parent's naturalization would -- as a direct result of naturalization itself -- count against the beneficiary's age and could lead, as in this case, to a beneficiary aging out "through no fault of their own." Id. at 2. Even more surprising, given the special focus of the statute's drafters on protecting the children of U.S. citizens, is that the very act of the parent becoming a U.S. citizen would result in previously uncounted bureaucratic delay to suddenly count against a beneficiary. Accordingly, the legislative history "overwhelmingly favor[s]" the appellants' reading of § 1151(f)(2), Cuthill, 990 F.3d at 284, and thus solidifies our conclusion that it is the appellants who offer the more faithful construction of the statutory text.

### D.

In sum, we conclude that, "[i]n the case of a petition . . . initially filed" in the F2A category, and "later converted, due to the naturalization of the parent, to a[n] [immediate relatives] petition," the "age of the [beneficiary] on the date of the parent's naturalization," 8 U.S.C. § 1151(f)(2), is the beneficiary's "statutory age" as provided in § 1153(h)(1). Based on the allegations in the complaint, Carlos was a "child" on the date of Eduardo's naturalization because his statutory age was

frozen at twenty.  See id. § 1101(b)(1).  The reclassification of Eduardo's visa petition to the F1 category was therefore in error, as Carlos was not, by statute, an adult.  We leave it to the District Court to determine the proper remedy on remand.[7]

## V.

The judgment of the District Court is **<u>reversed</u>**, and this case is **<u>remanded</u>** for further proceedings consistent with this opinion.

---

[7] Given that appellants never moved for summary judgment, we reverse and remand for further proceedings.